IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ELLIOT PIERCE, LEBA PIERCE, and
RIC HARTLINE d/b/a Ric Hartline Construction,

                  Plaintiffs,

v.                                        No. CIV 03-1282 LFG/RLP

CAMBRIA COMPANY, a Minnesota
corporation,

                  Defendant.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

### Introduction

THIS MATTER is before the Court on Defendant Cambria Company's ("Cambria") Motion to Dismiss for Lack of Personal Jurisdiction, filed November 10, 2003. [Doc. No. 2.] The Motion is fully briefed. [Doc. Nos. 3, 9, 10, 13.] No party requested oral argument on the motion, nor does the Court find that a hearing or additional discovery is necessary before deciding this motion on the briefs, attached affidavits and other materials supplied by the parties. After careful consideration of the pleadings, pertinent law and attachments, the Court concludes that it lacks personal jurisdiction over Defendant Cambria, and accordingly, that this action should be dismissed. The Court's reasoning follows.

### Background

Plaintiff Ric Hartline ("Hartline" or "Plaintiff") is a residential construction contractor in Bernalillo County, New Mexico. [Doc. No. 1, Complaint.] Plaintiffs Elliot Pierce and Leba Pierce

1

("Pierces" or "Plaintiffs") are residents of Bernalillo County.  In approximately 2001, Hartline was constructing a residence for the Pierces in Albuquerque, New Mexico. [Complaint, at ¶¶ 4, 7.]  This cause of action arises as a result of allegedly defective flat tiles sold by Cambria, to Hartline in early 2002, which Hartline used in the construction of the Pierce home.  [Id., at ¶ 4, 9, 11.]

Cambria is a foreign corporation incorporated under the laws of the State of Minnesota and headquartered in LeSueur, Minnesota.  [Doc. No. 3, p. 3, ¶ 1.]  Cambria manufactures quartz countertops, floor tiles and other surfaces for use in both residential and commercial settings.  [Id., at ¶ 3.]  Plaintiffs claim that the tiles they purchased from Cambria were not flat when delivered, had rough edges, became discolored shortly after installation and have warped. [Complaint, at ¶ 12.]  As a result, Plaintiff sued Cambria in New Mexico State District Court for Breach of Contract, Breach of Express and Implied Warranties, and Unfair Trade Practices Act Violations.  [Complaint.]  Defendant removed this matter to federal court based on diversity jurisdiction. [Doc. No. 1.]

Cambria argues that this case should be dismissed because the Court lacks personal jurisdiction over it based, *inter alia*, on a lack of "minimum contacts" between Cambria and the State of New Mexico.  Thus, according to Cambria, an exercise of jurisdiction here would offend the due process clause of the Fourteenth Amendment.  Plaintiffs counter that the Court has personal jurisdiction over Cambria, based on arguments that Cambria solicits New Mexico distributors for sales of its products, that it has done product marketing "extensively, systematically and continuously in New Mexico," and that Cambria's Company representative actively solicited Plaintiffs to buy its tile.  Thus, Plaintiffs contend that the Court properly has jurisdiction over Cambria.

**Analysis**

I.       **RULE 12(B)(2) MOTION TO DISMISS**

This is a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. The submission of affidavits or other materials in connection with a Rule 12(b)(2) motion does not convert it into one for summary judgment. Sunwest Silver, Inc. v. International Connection, Inc., 4 F. Supp. 2d 1284, 1285 (D.N.M. 1998). A plaintiff opposing a motion to dismiss for lack of personal jurisdiction bears the burden of establishing that the exercise of jurisdiction over the defendant is proper. Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453, 456 (10th Cir. 1996). If the Rule 12(b)(2) motion is submitted on the basis of affidavits and other written materials, and decided without an evidentiary hearing, the plaintiff need only make a *prima facie* showing to avoid dismissal for lack of jurisdiction. Id.; OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998); *see* Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1075 (10th Cir. 1995). On such a pre-trial motion to dismiss, all factual disputes are resolved in favor of the plaintiff. Kuenzle, 102 F.3d at 456. The Court may not weigh the factual evidence before it. Sunwest Silver, 4 F. Supp. 2d at 1285-86.

Here, the Court recognizes that it has discretion to allow a party to seek limited discovery on the jurisdictional issue or to hold an evidentiary hearing, before resolving a motion to dismiss. *See* Doe v. Roman Catholic Diocese of Boise, Inc., 121 N.M. 738, 742, 918 P.2d 17 (Ct. App.), *cert. denied*, 121 N.M. 693 (1996). When no evidentiary hearing is conducted, the trial court will consider the affidavits in the light most favorable to the plaintiff. Id.

Here, Plaintiffs did not request a hearing. Plaintiffs did, however, make passing reference to a possible need for discovery regarding whether Cambria had local distributors in New Mexico, was selling its products in New Mexico, was shipping its product to New Mexico and was using its

national advertising to reach New Mexico residents. Notwithstanding Plaintiffs' mention of discovery, they also contend that there is "already substantial evidence" for the Court to resolve this matter. The Court agrees with Plaintiffs that there is substantial evidence in the record obviating any need for discovery or a hearing. In other words, the Court finds that the matter is fully briefed and that both parties have presented ample affidavit testimony and other materials, thereby permitting a decision to be made on the materials submitted. *See* Nolan v. de Baca, 603 F.2d 810, 812 (10th Cir. 1979) (no abuse of discretion where court denied oral argument), *cert. denied,* 446 U.S. 956 (1980).

## II.     NEW MEXICO'S LONG ARM STATUTE, NMSA § 38-1-16(A)

"To obtain personal jurisdiction over a defendant in a diversity action, a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process." Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000). Thus, because New Mexico is the forum state, New Mexico state law must be considered in determining whether jurisdiction is proper. Id.; Sunwest Silver, 4 F. Supp. 2d at 1286.

Plaintiffs contend that jurisdiction is proper under New Mexico's Long Arm Statute, NMSA § 38-1-16(A). The requirements of the long-arm statute are often articulated as a three-prong test: (1) a defendant must do one of the acts enumerated in the statute, e.g., transact business in New Mexico or commit a tortious act in New Mexico; (2) plaintiffs' cause of action must arise from the specified act(s); and (3) the defendant must have minimum contacts sufficient to satisfy due process. Visarraga v. Gates Rubber Co., 104 N.M. 143, 146, 717 P.2d 596, 599 (Ct. App.), *cert. quashed*, 104 N.M. 137 (1986). However, in practice, the three inquiries collapse into just one: whether there are minimum contacts between the defendant and the forum state. "New Mexico courts equate the

'transaction of business' and 'the commission of a tortious act' . . . with the due process 'minimum contacts' standard." Id. (internal citation omitted); Martin v. First Interstate Bank of California, 914 F. Supp. 473, 476 (D.N.M. 1995).

"In order to satisfy both state and federal constitutional requirements, the minimum contacts with New Mexico must be sufficient so as not to violate basic principles of due process." Visarraga, 104 N.M. at 146. The Due Process Clause protects an individual from being subjected to the judgment of a forum with which "he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985). The minimum contacts inquiry serves at least two purposes.

> First, it protects the defendant from having to defend a lawsuit in a jurisdiction where it has no meaningful contacts and therefore may be unfamiliar with both the substantive and procedural law. . . . Second, it acts to ensure that the state courts do not reach beyond the limits imposed on them by their status as coequal sovereigns in a federal system.

Origins Natural Resources, Inc. v. Kotler, 133 F. Supp. 2d 1232, 1235 (D.N.M. 2001) (internal citations omitted). Thus, a defendant's conduct and connection with the forum must be such that the defendant could reasonably anticipate being haled into court in that forum. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980). The contacts also must be sufficient so that the maintenance of the suite does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, Etc., 326 U.S. 310, 316 (1945).

Under the due process analysis, there must be some act by which the nonresident party "purposefully avails" itself of the privilege of conducting activities in the forum state. Hanson v. Denckla, 357 U.S. 235, 253 (1958). Indeed, the purposeful availment requirement is essential to

5

deciding whether there are sufficient minimum contacts. Customwood Mfg., Inc. v. Downey Constr. Co., 102 N.M. 56, 57 (1984). *See also* State Farm Mutual Ins. Co. v. Conyers, 109 N.M. 243, 245 (1989) (key focus is that of purposeful availment); Valley Wide Health Servs. Inc. v. Graham, 106 N.M. 71, 72-73 (1987) (longstanding rule recognized in medical services case that non-resident defendant will not be subjected to the court's jurisdiction unless its activities are properly characterized as "purposeful availment" rather than incidental). The purposeful availment requirement ensures that a defendant will not be sued in a foreign jurisdiction solely as a result of the unilateral activity of another party. Burger King, 471 U.S. at 475.

With respect to Cambria's contacts with the State of New Mexico, the following facts are undisputed, even though Plaintiffs question some of their relevance or materiality. Cambria is a Minnesota corporation with its principal place of business in LeSueur Minnesota. Its fabrication facilities are located in Chicago and Atlanta. Cambria is neither licensed nor qualified to do business in New Mexico. It has never purchased or otherwise solicited business in any radio or television broadcasts in New Mexico. Cambria has no offices or other facilities in New Mexico. It has no mailing address or telephone listings in New Mexico. None of Cambria's employees or officers or agents, etc. are domiciled in New Mexico. Cambria does not own any real property in New Mexico and has no bank account or assets in New Mexico. Cambria has never filed or been required to file New Mexico state taxes and maintains no records in New Mexico. It does not have a designated agent for service of process in New Mexico and has not held formal or informal meetings in New Mexico. [Doc. No. 3, Ex. A, Sue Gliszinski Affidavit.]

In addition, Cambria has no authorized distributors or fabricators of its products in New Mexico, even though Plaintiffs provide some argument to the contrary. Cambria has advertised its

6

products in several nationally circulated magazines. It maintains a website on the Internet with the URL address of www. cambriausa.com but does not sell any of its quartz products over the Internet or through its website. [Id.]

With respect to the matter at hand, it is uncontested, for purposes of deciding this motion, that Leba Pierce saw Cambria's products or advertisements in a national publication, contacted Cambria through their phone number and spoke to Mike Morton, a sales representative for Cambria. Mr. Morton told Ms. Pierce that she could obtain more information about their engineered stone tile products from Cambria's Internet website, and also sent several product samples to Ms. Pierce which were shipped by Cambria to Ms. Pierce in New Mexico. Mr. Morton informed Ms. Pierce that Arizona Title Company was Cambria's distributor in New Mexico and that she could go to their showroom to see Cambria products. Ms. Pierce went to Arizona Tile Company's site in Albuquerque and was told by Arizona Tile Company that it was not a distributor for Cambria. The Arizona Tile Company offered no samples of Cambria products. Ms. Pierce re-contacted Mr. Morton, who told her that she could purchase the tile directly from Cambria if there was no local distributor in New Mexico. Ms. Pierce turned the matter over to her contractor, Hartline. [Doc. No. 9, Ex. 2, Leba Pierce Affidavit.]

In late 2001, Hartline called Cambria's sales department in Minnesota to make inquiries about Cambria's products. Hartline made it clear to the Cambria representative that he was interested in buying stone tiles that could be installed in a residence in Albuquerque. He requested his own samples from Cambria, which Cambria sent to him. He was also supplied product specifications at that time.

Several weeks went by, and Mr. Morton contacted Hartline to follow-up. Hartline described Mr. Morton as being "very interested" in convincing Hartline to purchase the Cambria product. According to Hartline, Cambria employees called him several times soliciting his business (after Hartline first contacted Cambria) and that an unidentified Cambria representative told Hartline that Cambria wanted to sell him their engineered stone tiles because it would assist them in obtaining a local distributor. At the same time, however, Hartline asserts that Cambria employees advised him Cambria had a distributor in New Mexico--Arizona Tile Company. Hartline observed samples of Cambria tiles and brochures at a business in New Mexico called Tom Sawyer Enterprises, Inc. ("TSEI"). He claims that while building the Pierce residence, a representative of TSEI approached him and told Hartline that he was a sales representative in New Mexico for Cambria and its engineered stone tiles. In conversations with TSEI (unidentified individuals), Hartline states that he was told TSEI had installed approximately 30 Cambria engineered stone slab countertops in New Mexico. Hartline learned (at an unidentified date) that he could buy Cambria stone tiles through Albuquerque Countertops in New Mexico and has seen advertisements (unidentified dates) by Cambria in Remodeling Magazine, Better Homes & Gardens Kitchen & Bath Ideas Magazine and Builder Magazine. [Doc. No. 9, Ex. 1, Ric Hartline Affidavit.]

Plaintiffs also provided an affidavit statement by Jim Harris who is a professional stone installer and countertop fabricator hired by Hartline to install the Cambria tiles. Before starting the work, Harris states that he contacted Cambria to obtain information about installation of the product but had to leave a message for Cambria to return his call. A Cambria representative later returned Harris' call. Harris states that the representative tried very hard to convince Harris to buy a semi-truck load of their engineered stone slabs to be used for countertops and sent Harris samples. Harris

further states that the Cambria representative tried to convince Harris to become a distributor for Cambria. [Doc. No. 9, Ex. 3, Harris Affidavit.]

It is undisputed that Plaintiffs purchased the Cambria tiles in the spring of 2002, that the purchase was arranged via telephone calls and fax transmittals between the parties and that the terms of the sale were full payment in advance and shipment to Mr. Hartline F.O.B. ("free on board")[1] LeSueur, Minnesota. Thus, according to Cambria, this means that the sale was consummated in Minnesota, delivery occurred in Minnesota, and title to Cambria's products passed to Hartline in Minnesota. Plaintiffs offer no evidence to the contrary on this point.

For ease of discussion, the Court divides Plaintiffs' evidence of contacts into several categories: (a) communications, telephone calls and facsimile between Plaintiffs and Cambria; (b) advertising by Cambria in national magazines; (c) Cambria's website on the Internet; and (d) Cambria's distributors and solicitation of possible distributors.

### A.     *Communications, Telephone calls, Facsimile*

In analyzing the minimum contacts question, the Court looks at the quantity and quality of Cambria's contacts with Plaintiffs. This includes prior negotiations, contemplated future consequences, along with the terms of the contract and the actual course of dealing. Soma Medical International v. Standard Chartered Bank, 196 F.3d 1292, 1298 (10th Cir. 1999).

Here, it is without dispute that Plaintiffs, both Ms. Pierce and Hartline initiated the first telephone contacts with Cambria to ask about Cambria's products. Plaintiffs unilaterally selected Cambria as a possible supplier of a product they desired. The mere fact that Cambria responded to Plaintiffs' telephone inquiries by returning calls or sending samples does not constitute purposeful

---

[1]Title to goods usually pass from seller to buyer at the F.O.B. location. NMSA § 55-2-319(1) (1978).

9

availment under the facts of this case. Cambria did not solicit Plaintiffs' business. Plaintiffs sought out Cambria and clearly pursued obtaining a product from Cambria. Confirmations or continuations of a business deal already established/initiated are different than actual initiations of a business deal by the defendant company. Customwood Mfg., Inc., 102 N.M. at 58.

Moreover, "[i]t is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." Far West Capital, 46 F.3d at 1077; Harnischfeger Eng'rs, Inc. v. Uniflo Conveyor, Inc., 883 F. Supp. 608, 615 (D. Utah 1996) (noting that numerous, e.g., "hundreds" of phone calls and letters contributed to finding of minimum contacts), *reversed on other grounds by*, 242 F. Supp. 2d 1043 (D. Utah 2003). "Ordinarily, the use of mail and telephone services to contact a New Mexico resident from out of state is insufficient to satisfy the 'purposeful availment' prong of a minimum-contacts analysis." DeVenzeio v. Rucker, 121 N.M. 807, 809-10 (Ct. App.), *cert. denied*, 121 N.M. 783 (1996); Sanchez v. Church of Scientology of Orange County, 115 N.M. 660, 664 (1993).

The Court finds Plaintiffs' argument unconvincing that they did not initiate the business transaction in this case. Moreover, Cambria's few telephone calls, fax transmittals, and/or mailings of samples evince little evidence of minimum contacts.

### B.     *Advertising in National Magazines*

The mere fact that a defendant advertises in a national trade magazine that is circulated in New Mexico, does not, in and of itself, establish sufficient minimum contacts for purposes of personal jurisdiction. Fidelity and Casualty Co. of N.Y. v. Philadelphia Resins Corp., 766 F.2d 440, 446-47 (10th Cir. 1985), *cert. denied*, 476 U.S. 1082 (1986). Here, Ms. Pierce observed Cambria ads in a national magazine that was apparently circulated in New Mexico. These ads led to Ms. Pierce's first

contacts with Cambria.  In addition, Hartline asserts that he saw Cambria ads in three different national magazines.  While Hartline provides the names of the magazines, he give no dates of the publications.

Cambria's marketing director provided undisputed affidavit testimony indicating that the magazines to which Hartline referred did not carry Cambria advertisements until 2003, well after the sales communications between Plaintiffs and Cambria occurred.  [Doc. No. 13, Ex. D, Bien-Sinz Affidavit.]  Cambria's advertisements subsequent to the time Plaintiffs contacted and purchased Cambria's products are of little import.  However, Cambria did advertise in one national magazine in 2002 approximately six times.  That magazine had a national circulation of 51,028, and a New Mexico circulation of 238 or less than one-half percent of its total circulation.  [Id.]

The Court recognizes that Plaintiffs are not attempting to satisfy the minimum contacts prong on the basis of national advertising alone.  Here, however, their overall evidence of contacts between Cambria and the forum state is so weak, that this meager evidence of national magazine ads fails to tip the scape in favor of finding sufficient minimum contacts.

### C. *Website on the Internet*

Cambria concedes that it has a website on the Internet but claims it is primarily informational in nature.  In other words, interested consumers are not able to purchase Cambria products at or through the website.  However, the website is interactive to the extent that an interested buyer could send in her or his name and request information from Cambria about it products.

The Tenth Circuit has adopted the analysis set forth in Zippo Manuf. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W. D. Pa. 1997), in which that court found that a passive web site that gives out information to interested viewers is not grounds for the exercise of personal

11

jurisdiction.  <u>Soma Med. Int'l</u>, 196 F.3d at 1297.  On the other hand, where a company clearly transacts business over the Internet, personal jurisdiction may be proper.  <u>Id.</u>

The middle ground is occupied by an interactive website, similar to Cambria's website, where a user can exchange information with the host computer.  <u>Soma Med. Int'l</u>, 196 F.3d at 1296. "Whether an exercise of jurisdiction is appropriate depends on 'the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.'"  <u>Id.</u>

Here, the Court determines that the level of interactivity and commercial nature of the exchange of information on Cambria's website is slight.  Moreover, the website does not appear to have been a catalyst in Plaintiffs' decision to contact Cambria.  Thus, the Court does not conclude that this particular website favors a finding of personal jurisdiction.  *See* <u>Origins Natural Resources, Inc.</u>, 133 F. Supp. 2d at 1235-37 (comprehensive discussion by the Honorable Bruce Black regarding whether a new analytical construct is necessary to consider the impact of computer contacts on questions of personal jurisdiction).

### D. *Distributorships and/or Solicitation of Distributors*

Having a distributor of its products in New Mexico could be strong evidence of minimum contacts between Cambria and New Mexico. Here, however, there is no such evidence regardless of Plaintiffs' efforts to show otherwise.  The fact that a Cambria representative mistakenly stated that another company in Albuquerque was carrying and selling Cambria products does not demonstrate the existence of a distributorship.  Moreover, the fact that Cambria representatives may have tried to convince various people to become its distributor does not amount to the existence of a distributorship.

12

The Court also examined very carefully Plaintiffs' evidence in relation to Tom Sawyer Enterprise, Inc.'s ("TSEI") possession of Cambria samples and possible distribution of Cambria brochures in Albuquerque. However, Plaintiffs' assertions, more akin to speculations, simply do not match up with affidavit testimony from Cambria that it "does not now, nor has it ever in the past sold or shipped any of its quartz tile or countertop products to Tom Sawyer Enterprises, Inc." "Tom Sawyer Enterprises, Inc. is not affiliated with Cambria in any way." Cambria suspects that TSEI may have obtained Cambria product from a company in Texas, to whom Cambria does provide product. [Doc. No. 13, Ex. B, Supp. Aff. Gliszinski.]

Even more illuminating is the affidavit statement from Mark Sawyer, president of TSEI. Mr. Sawyer stated that his company obtains all of its Cambria product from a Texas corporation and has never ordered or received Cambria directly from Cambria in Minnesota. While TSEI installed Cambria countertops in New Mexico, all of the installations occurred in 2003. [Doc. No. 13, Ex. E, Mark Sawyer Affidavit.]

In addition, Cambria provided an affidavit from Frank Howard, who is an outside sales representative from TSEI. Mr. Howard stated that in early 2003, he stopped to see the construction at the Pierces' residence, including the installation of Cambria products. Hartline introduce himself to Howard but apparently did not allow Howard into the home. Contrary to Hartline's assertions, Howard categorically denied that he represented to Hartline that he (Howard) was a Cambria sales representative. [Doc. No. 13, Ex. F, Frank Howard Affidavit.]

Here, even if some of Cambria's brochures and samples made it into New Mexico during the pertinent time frame, it is defendant's activities that must provide the basis for personal jurisdiction,

13

not the acts of other third parties. Visarraga, 104 N.M. at 147. Plaintiffs have failed to demonstrate the existence of a Cambria distributorship in New Mexico.

Indeed, the combination of contacts that Plaintiffs describe simply fails to arise to sufficient minimum contacts that would satisfy due process concerns. Cambria has not pursued a policy of purposeful business activity in New Mexico. Its contacts here can be characterized as minimal and random at this point. Its communications with Plaintiffs were minimal and did not number into the "hundreds." Cambria did not initiate contact with Plaintiffs; it merely responded to requests from Plaintiffs. In other words, Cambria's act of selling its product to Plaintiffs was attributable to Plaintiffs' initiation of the transaction by contacting Cambria first and ordering the material. Cambria has no agent, employee, officer, office, bank account, records, or property in New Mexico.

There is not evidence that Cambria advertises through telephone books, television or radio in New Mexico. Its national advertising at the time Plaintiffs made their purchase was minimal. There is no evidence that Cambria made any direct sales to residents of New Mexico other than the isolated transaction with Plaintiffs. With respect to that transaction, Cambria did not deliver the product to New Mexico and instead, arranged for prepayment in Minnesota, delivery in Minnesota, and transfer of title in Minnesota through the use of shipment F.O.B.

Under the circumstances of this case, Plaintiffs have failed to satisfy their *prima facie* showing that Cambria purposefully initiated activities in New Mexico. The sale in question is more akin to a random or isolated transaction. While a single transaction can be sufficient to subject a non-resident defendant to this Court's jurisdiction, the Court still must weigh the due process concerns. Customwood Mfg., Inc., 102 N.M. at 57. Here, there is simply is not sufficient evidence of a significant relationship between Cambria and the forum state. Moreover, the Court concludes that

to permit the proceeding in New Mexico would offend traditional notions of fair play and substantial justice. Thus, the Court will dismiss the action for lack of personal jurisdiction over Cambria.

## **Conclusion**

For all of the above-stated reasons, Defendant Cambria's Motion to Dismiss will be granted.

IT IS THEREFORE ORDERED that Defendant Cambria Company's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 2] is GRANTED and there matter is hereby DISMISSED, without prejudice.[2]

 

*Lorenzo F. Garcia* (signature)
Lorenzo F. Garcia
Chief United States Magistrate Judge

---

[2] The dismissal is without prejudice so as to allow Plaintiffs to re-file their lawsuit in an appropriate forum.